# EXHIBIT "A"

Filing # 67466370 E-Filed 02/02/2018 04:56:33 PM

IN THE CIRCUIT COURT, 18TH
JUDICIAL CIRCUIT, IN AND FOR
BREVARD COUNTY, FLORIDA

CASE NO.:   05-2018-CA-014557-XXXX-XX

VIKSAR, INC., a Florida corporation

     Plaintiff,

vs.

HARTFORD STEAM BOILER INSPECTION,
AND INSURANCE COMPANY, a/k/a The Hartford Steam
Boiler Inspection and Insurance Company, a foreign
insurance corporation,

     Defendant.

_____/

## <u>SUMMONS</u>

THE STATE OF FLORIDA:

TO:   HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY
     a/k/a The Hartford Steam Boiler Inspection and Insurance Company
     c/o The Florida Department of Financial Services
     Legal Process Section
     P.O. Box 6200
     Tallahassee, FL 32314-6200

     YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant, HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY.

     Each Defendant is required to serve written defenses to the Complaint or Petition on Plaintiffs' attorney, whose name and address is TY TYLER, Tyler & Hamilton, P.A., Midtown Centre, Building 4000, 4811 Beach Boulevard, Suite 200, Jacksonville, Florida 32207, within <u>20</u> days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

WITNESS my hand and the seal of this Court on

**02/06/2018**
_____

SCOTT ELLIS
As Clerk of the Court

By:_____
As Deputy Clerk

(SEAL)

· Filing # 67466370 E-Filed 02/02/2018 04:56:33 PM

IN THE CIRCUIT COURT, 18TH
JUDICIAL CIRCUIT, IN AND FOR
BREVARD COUNTY, FLORIDA

CASE NO.:

VIKSAR, INC., a Florida corporation

     Plaintiff,

vs.

HARTFORD STEAM BOILER INSPECTION,
AND INSURANCE COMPANY, a/k/a The Hartford Steam
Boiler Inspection and Insurance Company, a foreign
insurance corporation,

     Defendant.

_____/

## C O M P L A I N T

    The Plaintiff, VIKSAR, INC., by its undersigned attorneys, hereby sues the Defendant,
HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, a/k/a The Hartford
Steam Boiler Inspection and Insurance Company, a foreign insurance corporation, and alleges:

    1.    This is an action for breach of contract with damages in excess of $15,000.00,
exclusive of interest, costs and attorneys' fees.

    2.    The Plaintiff is and at all material times was, a Florida corporation, organized and
existing pursuant to the laws of this State, with its primary place of business in Cocoa Beach,
Brevard County, Florida.

    3.    The Defendant is a foreign insurance corporation authorized to transact the business
of insurance and transacting the business of insurance in Florida and in Brevard County.

    4.    On or about August 2, 2017, Defendant issued to Plaintiff a policy of insurance
providing various coverages to Plaintiff with effective date July 31, 2017 through July 31, 2018. A
true and correct copy of that policy of insurance is attached hereto as Exhibit "A".

5.    The subject policy provided various coverages and insured against accidents and electronic circuitry impairment as those terms are utilized in the subject policy of insurance.

6.    On or about September 10, 2017, during the course of Hurricane Irma, the insured property was damaged by a combination of forces, including off-premises electrical outages/surges, as well as electrical impairment/surges caused by wind driven rain as that term is utilized in the subject policy of insurance.

7.    As the direct and proximate result of the damages sustained, as referenced hereinabove, the Plaintiff suffered property loss, a loss of business income, as well as other losses which are covered under the terms of the policy of insurance.

8.    Upon receiving the report of the claim, Defendant verbally denied the claim because some of the damage occurred during the course of a hurricane. However, the Defendant's denial of the claim did not take into consideration the exceptions to the exclusions relied upon for this denial.

9.    Following the verbal denial, Defendant relented and caused one or more adjusters to visit the site of the loss, although ultimately, Defendant reaffirmed its prior verbal denial and refused to pay the Plaintiff any proceeds. This constituted a breach of the insuring agreement and Plaintiff has been damaged thereby.

10.    All conditions precedent to bringing this action have been performed by Plaintiff and/or waived by Defendant's wrongful denial of coverage.

11.    Plaintiff was required to retain the services of the undersigned attorneys in order to bring this action and has agreed to pay a reasonable fee therefor. Pursuant to Fla. Stat. §627.428, in the event Plaintiff prevails, it is entitled to recover its reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff demands judgment against Defendant, compensatory damages, interest, costs and reasonable attorneys' fees.

## DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands trial by jury on all issues so triable.

TYLER & HAMILTON, P.A.

/s/ Ty Tyler
TY TYLER, ESQ.
Florida Bar No.: 363413
Midtown Centre, Building 4000
4811 Beach Boulevard, Suite 200
Jacksonville, Florida 32207
(904) 398-9999 Telephone
(904) 398-0806 Facsimile
courtdocs@floridainsurancelawyers.com
tandhpa@bellsouth.net
Attorney for Plaintiff, VIKSAR, INC.

**The Hartford Steam Boiler**
**Inspection and Insurance Company**

Munich RE  

# HSB TechAdvantage™
## Common Policy Declarations

Presented by:     **Amwins Access Insurance Svc Llc**

(407)541-5000

To report a claim - Call 1-888-HSB-LOSS (472-5677);   Fax 1-888-329-5677.
For questions and information about your policy – Call 1-800-472-1866.

Issue Date.......... 08/02/2017

Policy Number ........................... FBP2362627

Named Insured:
**Viksar, Inc**

Mailing Address........................ 5625 N. Atlantic Ave
Cocoa Beach, FL  32931

Policy Period............................. 07/31/2017 to 07/31/2018 at 12:01 A.M.
Standard Time at the above Mailing Address

Annual Premium .................................................................$1,814.00

Notices:          Your policy may contain a Notice to Policyholders.   State-specific notices are
contained in the applicable 'State Changes' documents, attached at the end of
your policy.   Other notices may appear at the beginning of your policy.

EXHIBIT  A

# Common Policy Declarations

Named Insured:
Viksar, Inc

Policy Number ............... FBP2362627

Effective Date ................ 07/31/2017
Issue Date....................... 08/02/2017

This policy is made up of these Declarations and the following forms:

| Description | | Form No. | |
|---|---|---|---|
| Equipment Breakdown Coverage Part Declarations No. 1 | TEC | EBCDEC | 07/2015 |
| Schedule of Locations | EFB | SCHLOCS | 11/2014 |
| Agreement and Conditions | | 6670 | 07/2015 |
| HSB TechAdvantage™ Equipment Breakdown Coverage Form | | TEC150 | 07/2015 |
| Terrorism Risk Insurance Act Disclosure | END | EBTRIA | 01/2015 |
| Florida Changes | TEC | FL | 07/2015 |

# Equipment Breakdown Coverage Part Declarations No. 1

Named Insured:
Viksar, Inc

Policy Number ............... FBP2362627

Effective Date ................ 07/31/2017
Issue Date...................... 08/02/2017

These coverages apply to any location listed on the Schedule of Locations for Equipment Breakdown Coverage Part Declarations No. 1.

### Covered Cause of Loss

Accident................................................ Included
Electronic Circuitry Impairment.................... Included

The Covered Cause of Loss for this Equipment Breakdown Coverage always includes "accident."
If indicated as Included above, the Covered Cause of Loss for this Equipment Breakdown Coverage also includes "electronic circuitry impairment."

| Coverages | Limits |
| --- | --- |
| Equipment Breakdown Limit............................................. | $435,000 |
| Property Damage............................................... | Included |
| Business Income............................................... | $100,000 |
| Extra Expense................................................. | Combined with Business Income |
| Civil Authority............................................... | Combined with Business Income |
| Contingent Business Income........................................... | $25,000 |
| Data Restoration............................................... | $50,000 |
| Demolition.................................................... | $50,000 |
| Expediting Expense............................................ | $50,000 |
| Green........................................................ | $25,000 |
| Hazardous Substances.......................................... | $50,000 |
| Mold......................................................... | $25,000 |
| Newly Acquired Locations...................................... | $250,000 |
| Off Premise Equipment Breakdown.............................. | $25,000 |
| Ordinance or Law.............................................. | $25,000 |
| Perishable Goods.............................................. | $25,000 |
| Public Relations.............................................. | $5,000 |
| Service Interruption.......................................... | $100,000 |

# Equipment Breakdown Coverage Part Declarations No. 1

Named Insured:
Viksar, Inc

Policy Number ............... FBP2362627

Effective Date ................ 07/31/2017
Issue Date........................ 08/02/2017

## Deductibles

| | |
|---|---|
| Direct................................................................................ | $2,500.00 |
|     Except A/C and Refrigeration Systems.................. | $25.00 per HP, Minimum of $2,500.00 |
| Indirect.............................................................................. | 24 Hours |

## Other Conditions

| | |
|---|---|
| Interruption of Service Waiting Period: | 24 Hours |
| Extended Period of Restoration | 5 Days |
| Newly Acquired Locations | 90 Days |
| Business Income Coinsurance | Waived Until 07/31/2018 |
| Covered Services as defined under "interruption of service" includes "cloud computing service". | |

# Schedule of Locations

Named Insured:
Viksar, Inc

Policy Number ............... FBP2362627

Effective Date ................ 07/31/2017
Issue Date........................ 08/02/2017

| Location Number | Coverage Part Declarations Number | Location Address |
|---|---|---|
| 1 | 1 | Viksar, Inc<br>5625 N Atlantic Ave<br>Cocoa Beach, FL 32931 |

**The Hartford Steam Boiler**
**Inspection and Insurance Company**

Munich RE

Hartford Steam Boiler

# Agreement and Conditions

**The Hartford Steam Boiler**
**Inspection and Insurance Company**
One State Street
Hartford, Connecticut 06102-5024

Claims Telephone Number: 1-888-472-5677
Claims Fax Number: 1-888-329-5677
Claims Email: New_Loss@hsb.com

Inspection Service Telephone Number: 1-800-333-4677
Inspection Service Email: NSCInsp_Hotline@hsb.com

## Insuring Agreement

In return for payment of the premium and subject to all terms of the policy, we agree with you to provide the insurance as stated in this policy.

In Witness Whereof, the Company identified on the Declarations has caused this policy to be signed by its President and Corporate Secretary at Hartford, Connecticut.

Greg Barats
President and Chief Executive Officer

Nancy C. Onken
Corporate Secretary

6670  07/2015

Page 1 of 4

©2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission
vs

Filing 67466370

05-2018-CA-014557-XXXX-XX

# General Conditions

## I.   COMMON POLICY CONDITIONS

### A.   CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation.   The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B.   CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C.   EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D.   INSPECTIONS AND SURVEYS

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions relate only to insurability and the premiums to be charged.   We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### E.   PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F.   TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## II.   CALCULATION OF PREMIUM

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

6670  07/2015

©2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission

Filing 67466370

VS

05-2018-CA-014557-XXXX-XX

## III. REPORT OF VALUES

You must report insurable values to us at least once a year.

## IV. ADJUSTMENT OF PREMIUM

A. The premium charged at the inception of each policy year is an advance premium. When we receive updated insurable values from you or when we determine updated insurable values through an audit or claim adjustment, we will determine an adjusted premium for this insurance.

B. If the adjusted premium is less than the advance premium, we will return the excess premium to you. Such excess premium will not exceed 75% of the advance premium.

C. If the adjusted premium is greater than the advance premium, we will charge the additional premium based on your reports of value.

## V. JOINT OR DISPUTED LOSS AGREEMENT

A. This condition is intended to facilitate payment of insurance proceeds when:

1. Both a commercial property policy and this equipment breakdown policy are in effect;

2. Damage occurs to Covered Property that is insured by the commercial property policy and this equipment breakdown policy; and

3. There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

B. The provisions of this condition apply only if all of the following requirements are met:

1. The commercial property policy carried by the Named Insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this condition;

2. There is a Joint Loss or Disputed Loss as defined below; and

3. The total amount of the loss is agreed to by you, the commercial property insurer(s) and us.

C. Joint Loss and Disputed Loss are defined as follows:

1. Joint Loss means that there is damage to property that is Covered Property under both the commercial property policy and this policy and both the commercial property insurer(s) and we admit to some liability for payment under the respective policies.

2. Disputed Loss means that there is damage to property that is Covered Property under both the commercial property policy and this policy and the commercial property insurer(s) and we agree that there is some liability under one policy or the other, but disagree about which policy is liable for the loss.

D. If the requirements listed in paragraph B. above are satisfied, we and the commercial property insurer(s) will make payments to the extent, and in the manner, described as follows:

1. We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this equipment breakdown policy and one-half (1/2) the amount of the loss that is in disagreement.

2. The commercial property insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the commercial property policy and one-half (1/2) the amount of loss that is in disagreement.

3. Payments by the insurers of the amounts that are in disagreement, as described in paragraphs 1. and 2., do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

4. The amount in disagreement to be paid by us under this condition shall not exceed the amount payable under the equivalent loss agreement(s) of the commercial property policy.

5. The amount to be paid under this condition shall not exceed the amount we would have paid had no commercial property policy been in effect at the time of loss. In no event will we pay more than the applicable Equipment Breakdown Limit shown in the Declarations.

6. Acceptance by you of sums paid under this condition does not alter, waive or surrender any other rights against us.

©2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission
vs

E.   Arbitration

1.   The commercial property insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this condition.

2.   You agree to cooperate with any arbitration procedures.

3.   There will be three arbitrators: one will be appointed by us, and another will be appointed by the commercial property insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

F.   Final Settlement Between Insurers

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s). In addition, the insurer(s) found responsible for the greater portion of the loss must pay liquidated damages to the other insurer(s) on the amount of the excess contribution of the other insurer(s). Liquidated damages are defined as interest from the date the insured invokes this agreement to the date the insurer(s) that contributed the excess amount is reimbursed. The interest is calculated at 1.5 times the highest prime rate from the money rates column of the Wall Street Journal during the period of the liquidated damages.   Arbitration expenses are not a part of the excess contribution for which liquidated damages are calculated. Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

©2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission

Filing 67466370

vs

05-2018-CA-014557-XXXX-XX

# HSB TechAdvantage™
# Equipment Breakdown Coverage Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this Insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Section G - DEFINITIONS. Examples are shown for illustrative purposes only and do not represent predicted or expected outcomes.

## A.  COVERAGE

This Equipment Breakdown Coverage provides insurance for a Covered Cause of Loss as defined in A.1. below. In the event of a Covered Cause of Loss, we will pay for loss as described in A.2. below.

### 1.  Covered Cause of Loss

#### a.  "Accident" and "Electronic Circuitry Impairment"

The following applies when Electronic Circuitry Impairment is shown as Included in the Declarations:

The Covered Cause of Loss for this Equipment Breakdown Coverage is an "accident" or "electronic circuitry impairment." Without an "accident" or "electronic circuitry impairment" there is no Equipment Breakdown Coverage.

#### b.  "Accident" Only

The following applies when Electronic Circuitry Impairment is shown as Not Included in the Declarations:

The Covered Cause of Loss for this Equipment Breakdown Coverage is an "accident." Without an "accident," there is no Equipment Breakdown Coverage.

### 2.  Coverages Provided

This section lists the coverages that may apply in the event of a Covered Cause of Loss. Each coverage is subject to a specific limit as shown in the Declarations. See paragraph C.2. for details.

These coverages apply only to the direct result of a Covered Cause of Loss. For each coverage, we will pay only for that portion of the loss, damage or expense that is solely attributable to the Covered Cause of Loss.

#### a.  Property Damage

We will pay for physical damage to "covered property" that is at a location indicated in the Declarations at the time of the Covered Cause of Loss. When Electronic Circuitry Impairment is shown as Included in the Declarations, we will consider "electronic circuitry impairment" to be physical damage to "covered equipment."

#### b.  Business Income

(1) We will pay your actual loss of "business income" during the "period of restoration" that results directly from the necessary total or partial interruption of your business.

(2) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(3) We will consider the actual experience of your business before the Covered Cause of Loss and the probable experience you would have had without the Covered Cause of Loss in determining the amount of our payment.

#### c.  Extra Expense

We will pay the reasonable and necessary "extra expense" to operate your business during the "period of restoration."

#### d.  Civil Authority

We will pay for your loss and expense as defined under Business Income and Extra Expense coverages that results from a civil authority prohibiting access to a location indicated in the Declarations due solely to a Covered Cause of Loss that causes damage to property within one mile of such

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

05-2018-CA-014557-XXXX-XX

location, provided that such action is taken in response to dangerous physical conditions resulting from the Covered Cause of Loss, or to enable a civil authority to have unimpeded access to the damaged property.

**e. Contingent Business Income**

We will pay for your loss and expense as defined under Business Income and Extra Expense coverages that results from:

(1) An "interruption of supply"; or

(2) An "accident" at an "anchor location" that has been open for business for at least six months prior to the "accident" and is located within one mile of your scheduled location.

**f. Course of Construction**

This coverage is automatically included and does not need to be indicated in the Declarations.

(1) You will notify us promptly of any expansion or rehabilitation of any location indicated in the Declarations.

(2) All coverages applicable to any location indicated in the Declarations are extended to an expansion or rehabilitation of that location.

(3) This coverage begins at the time you begin the expansion or rehabilitation project.

(4) We will charge you additional premium for newly acquired equipment from the date the equipment is installed.

**g. Data Restoration**

(1) We will pay for your reasonable and necessary cost to research, replace or restore lost "data."

(2) We will pay for your reasonable and necessary cost to research, replace or restore "data" that is lost as the result of an "interruption of service."

(3) Coverage under g.(2) above applies to "data" stored in "covered equipment."

(4) If "cloud computing services" is indicated in the Declarations as a Covered Service, coverage under

g.(2) above also applies to "data" stored in the equipment of a "cloud computing services" provider with whom you have a contract.

(5) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of g.(1) and g.(2) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Data Restoration limit.

**h. Demolition**

(1) This coverage applies if a Covered Cause of Loss damages a building that is "covered property" and the loss is increased by an ordinance or law that:

(a) Requires the demolition of a building that is otherwise reparable;

(b) Is in force at the time of the Covered Cause of Loss; and

(c) Is not addressed under Hazardous Substances coverage or Mold coverage.

(2) We will pay for the following additional costs to comply with such ordinance or law:

(a) Your actual and necessary cost to demolish and clear the site of the undamaged parts of the building; and

(b) Your actual and necessary cost to reconstruct the undamaged parts of the building.

(3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the Covered Cause of Loss.

(4) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of h.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Demolition limit.

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

05-2018-CA-014557-XXXX-XX

i.  **Expediting Expenses**

With respect to your damaged "covered property," we will pay the reasonable extra cost to:

(1)  Make temporary repairs; and

(2)  Expedite permanent repairs or permanent replacement.

j.  **Green**

(1)  With respect to "covered property," we will pay for additional costs you incur:

(a)  To repair damaged property using equipment, materials and service firms required or recommended by a Recognized Environmental Standards Program, if repair is the least expensive option as described in Section E. LOSS CONDITIONS, 10. Valuation, paragraph a.;

(b)  To replace damaged property using equipment, materials and service firms required or recommended by a Recognized Environmental Standards Program, if replacement is the least expensive option as described in Section E. LOSS CONDITIONS, 10. Valuation, paragraph a.;

(c)  To dispose of damaged property or equipment, if practicable, through a recycling process; and

(d)  To flush out reconstructed space with up to 100% outside air using new filtration media.

As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage in the absence of this Green coverage.

(2)  With respect to any building that is "covered property" which, at the time of the Covered Cause of Loss was certified by a Recognized Environmental Standards Program, we will pay for costs you incur:

(a)  To prevent a lapse of such certification;

(b)  To reinstate the certification or

replace it with an equivalent certification;

(c)  For an engineer authorized by a Recognized Environmental Standards Program to oversee the repair or replacement of the damaged "covered property"; and

(d)  For a Professional Engineer to commission or recommission your damaged mechanical, electrical, or electronic building systems.

(3)  We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of j.(1) and (2) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Green limit.

(4)  This Green coverage is subject to the following provisions:

(a)  This coverage applies in addition to any coverage that may apply under Section E. LOSS CONDITIONS, 10. Valuation, paragraph d. Environmental, Safety and Efficiency Improvements, or any other applicable coverage.

(b)  This coverage only applies to "covered property" that must be repaired or replaced as a direct result of a Covered Cause of Loss.

(c)  This coverage does not apply to any property or equipment that is valued on an Actual Cash Value basis under this policy.

(5)  As used in this Green coverage, Recognized Environmental Standards Program means one of the following:

(a)  The United States Environmental Protection Agency ENERGY STAR® program;

(b)  The U.S. Green Building Council LEED® program;

(c)  The Green Building Initiative

TEC150 07/2015

Filing 67466370

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

Page 3 of 21

05-2018-CA-014557-XXXX-XX

GREEN GLOBES® program; or

(d) Any nationally or internationally recognized environmental standards program that is designed to achieve energy savings and related objectives of the type included in the programs listed above.

k.  **Hazardous Substances**

(1)  We will pay for the additional cost to repair or replace "covered property" because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in Perishable Goods, A.2.p.(3).

(2)  As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

(3)  We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of k.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Hazardous Substances limit.

l.  **Mold**

(1)  We will pay for the additional cost to repair or replace "covered property" because of contamination by mold, fungus, mildew or yeast, including any spores or toxins created or produced by or emanating from such mold, fungus, mildew or yeast, resulting from a Covered Cause of Loss. This includes the additional costs to clean up or dispose of such property. This does not include "spoilage" of personal property that is "perishable goods" to the extent that such "spoilage" is covered under Perishable Goods coverage.

(2)  As used in this Mold coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no mold, fungus, mildew, yeast, spores or toxins been involved.

(3)  We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of l.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Mold limit.

(4)  We will also pay the cost of testing performed after repair or replacement of the damaged "covered property" is completed only to the extent that there is reason to believe there is the presence of mold, fungus, mildew, yeast, spores or toxins.

m.  **Newly Acquired Locations**

(1)  You will notify us promptly of any newly acquired location that you have purchased or leased during the Policy Period.

(2)  All coverages applicable to any scheduled location under this Equipment Breakdown Coverage are extended to a newly acquired location that you have purchased or leased during the Policy Period.

(3)  This coverage begins at the time you acquire the property. As respects newly constructed properties, we will only consider them to be acquired by you when you have fully accepted the completed project.

(4)  This coverage ends when any of the following first occurs:

(a)  This Policy expires;

(b)  The number of days specified in the Declarations for this coverage expires after you acquire the location;

(c)  The location is incorporated into the regular coverage of this policy; or

(d)  The location is incorporated into the regular coverage of another

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

05-2018-CA-014557-XXXX-XX

Equipment Breakdown policy you have.

(5) If limits or deductibles vary by location, the highest limits and deductibles will apply to newly acquired locations. However, the most we will pay for loss, damage or expense arising from any "one equipment breakdown" is the amount shown as the Newly Acquired Locations limit in the Declarations.

(6) We will charge you additional premium for newly acquired locations from the date you acquire the property.

**n.   Off Premises Equipment Breakdown**

(1) We will pay for physical damage to transportable "covered equipment" that, at the time of the Covered Cause of Loss, is not at a location indicated in the Declarations.

(2) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of n.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Off Premises Equipment Breakdown limit.

(3) We will also pay for your loss and expense as defined under Data Restoration coverage that is the result of n.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included and subject to your Off Premises Equipment Breakdown limit.

**o.   Ordinance or Law**

(1) This coverage applies if a Covered Cause of Loss damages a building that is "covered property" and the loss is increased by an ordinance or law that:

(a) Regulates the construction or repair of buildings, including "building utilities";

(b) Is in force at the time of the Covered Cause of Loss; and

(c) Is not addressed under

Demolition coverage, Hazardous Substances coverage, or Mold coverage.

(2) We will pay for the following additional costs to comply with such ordinance or law:

(a) Your actual and necessary cost to repair the damaged portions of the building;

(b) Your actual and necessary cost to reconstruct the damaged portions of the building; and

(c) Your actual and necessary cost to bring undamaged portions of the building into compliance with the ordinance or law.

(3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the Covered Cause of Loss.

(4) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of o.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Ordinance or Law limit.

**p.   Perishable Goods**

(1) We will pay for physical damage to "perishable goods" due to "spoilage."

(2) We will also pay for physical damage to "perishable goods" due to "spoilage" that is the result of an "interruption of service."

(3) We will also pay for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

(4) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would

TEC150 07/2015

Filing 67466370

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

Page 5 of 21

05-2018-CA-014557-XXXX-XX

have been payable under this Perishable Goods coverage.

q.  **Public Relations**

(1)  This coverage only applies if you have sustained an actual loss of "business income" covered under this policy.

(2)  We will pay for your reasonable costs for professional services to create and disseminate communications, when the need for such communications arises directly from the interruption of your business. This communication must be directed to one or more of the following:

(a)  The media;

(b)  The public; or

(c)  Your customers, clients or members.

(3)  Such costs must be incurred during the "period of restoration" or up to 30 days after the "period of restoration" has ended.

r.  **Service Interruption**

We will pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of an "interruption of service."

**B.  EXCLUSIONS**

We will not pay for any excluded loss, damage or expense, even though any other cause or event contributes concurrently or in any sequence to the loss, damage or expense.

1.  We will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from a Covered Cause of Loss.

a.  **Fire and Explosion**

(1)  Fire, including smoke from a fire.

(2)  Combustion explosion. This includes, but is not limited to, a combustion explosion of any steam boiler or other fired vessel.

(3)  Any other explosion, except as specifically provided in the definition of "accident."

b.  **Ordinance or Law**

The enforcement of, or change in, any ordinance, law, regulation, rule or ruling

regulating or restricting repair, replacement, alteration, use, operation, construction or installation, except as specifically provided in A.2.h., k., l. and o. (Demolition, Hazardous Substances, Mold and Ordinance or Law coverages).

c.  **Earth Movement**

Earth movement, whether natural or human-made, including but not limited to earthquake, shock, tremor, subsidence, landslide, rock fall, earth sinking, sinkhole collapse or tsunami.

d.  **Nuclear Hazard**

Nuclear reaction, detonation or radiation, or radioactive contamination, however caused.

e.  **War and Military Action**

(1)  War, including undeclared or civil war;

(2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3)  Insurrection, rebellion, revolution, usurped power, political violence or action taken by governmental authority in hindering or defending against any of these.

f.  **Water**

(1)  Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2)  Mudslide or mudflow; or

(3)  Water that backs up or overflows from a sewer, drain or sump.

However, if electrical "covered equipment" requires drying out because of the above, we will pay for the amount you actually expend to dry out such equipment, subject to the applicable Property Damage limit and Direct Coverage deductible. We will not pay more than the Actual Cash Value of the affected electrical "covered equipment." We will not pay to replace such equipment or for any other loss, damage or expense.

g.  **Failure to Protect Property**

Your failure to use all reasonable means to protect "covered property" from damage

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

following a Covered Cause of Loss.

**h.  Fines**

Fine, penalty or punitive damage.

**i.  Mold**

Mold, fungus, mildew or yeast, including any spores or toxins created or produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean-up, remediation, containment, removal or abatement of such mold, fungus, mildew, yeast, spores or toxins, except as specifically covered under Mold coverage. However, this exclusion does not apply to "spoilage" of personal property that is "perishable goods" to the extent that such "spoilage" is covered under Perishable Goods coverage.

**j.  Vandalism**

Vandalism, meaning a willful and malicious act that causes damage or destruction.

2.  We will not pay for a Covered Cause of Loss caused by or resulting from any of the following causes of loss:

a.  Lightning.

b.  Windstorm or Hail. However, this exclusion does not apply when:

(1)  "Covered equipment" located within a building or structure suffers a Covered Cause of Loss that results from wind-blown rain, snow, sand or dust; and

(2)  The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

c.  Collision or any physical contact caused by a "vehicle." This includes damage by objects falling from aircraft. However, this exclusion does not apply to any unlicensed "vehicles" which you own or which are operated in the course of your business.

d.  Riot or Civil Commotion.

e.  Leakage or discharge of any substance from an automatic sprinkler system, including collapse of a tank that is part of the system.

f.  Volcanic Action.

g.  An electrical insulation breakdown test.

h.  A hydrostatic, pneumatic or gas pressure test.

i.  Water or other means intended to extinguish a fire, even when such an attempt is unsuccessful.

j.  Elevator collision.

3.  We will not pay for a Covered Cause of Loss caused by or resulting from any of the following perils, if such peril is a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

a.  Falling Objects.

b.  Weight of Snow, Ice or Sleet.

c.  Water Damage, meaning discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance containing water or steam.

d.  Collapse.

e.  Breakage of Glass.

f.  Freezing caused by cold weather.

g.  Discharge of molten material from equipment, including the heat from such discharged material.

4.  Exclusions 2. and 3. do not apply if all of the following are true:

a.  The excluded peril occurs away from any location indicated in the Declarations and causes an electrical surge or other electrical disturbance;

b.  Such surge or disturbance is transmitted through utility service transmission lines to an indicated location;

c.  At the indicated location, the surge or disturbance results in a Covered Cause of Loss to "covered equipment" that is owned or operated under the control of you or your landlord; and

d.  The loss, damage or expense caused by such surge or disturbance is not a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

05-2018-CA-014557-XXXX-XX

5. With respect to Business Income, Extra Expense and Service Interruption, we will also not pay for:

   a. Loss associated with business that would not or could not have been carried on if the Covered Cause of Loss had not occurred;

   b. Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business;

   c. That part of any loss that extends beyond or occurs after the "period of restoration." This includes, but is not limited to:

      (1) "Business income" that would have been earned after the "period of restoration," even if such loss is the direct result of the suspension, lapse or cancellation of a contract during the "period of restoration"; and

      (2) "Extra expense" to operate your business after the "period of restoration," even if such loss is contracted for and paid during the "period of restoration."

   d. Any increase in loss resulting from an agreement between you and your customer or supplier. This includes, but is not limited to, contingent bonuses or penalties, late fees, demand charges, demurrage charges and liquidated damages.

6. With respect to Civil Authority, Contingent Business Income, Off Premises Equipment Breakdown, Service Interruption, paragraph (2) of Data Restoration and paragraph (2) of Perishable Goods, we will also not pay for a Covered Cause of Loss caused by or resulting from any of the perils listed in Exclusion 3. above, whether or not such peril is a covered cause of loss under another coverage part or policy of insurance you have.

7. With respect to Data Restoration coverage, we will also not pay to reproduce:

   a. Software programs or operating systems that are not commercially available; or

   b. "Data" that is obsolete, unnecessary or useless to you.

8. With respect to Demolition and Ordinance or Law coverages, we will also not pay for:

   a. Increased demolition or reconstruction costs until they are actually incurred; or

   b. Loss due to any ordinance or law that:

      (1) You were required to comply with before the loss, even if the building was undamaged; and

      (2) You failed to comply with;

      whether or not you were aware of such non-compliance.

C. LIMITS OF INSURANCE

Any payment made under this Equipment Breakdown Coverage will not be increased if more than one insured is shown in the Declarations or if you are comprised of more than one legal entity.

   1. **Equipment Breakdown Limit**

      The most we will pay for loss, damage or expense arising from any "one equipment breakdown" is the amount shown as the Equipment Breakdown Limit in the Declarations.

   2. **Coverage Limits**

      a. The limit of your insurance under each of the coverages listed in A.2. from loss, damage or expense arising from any "one equipment breakdown" is the amount indicated for that coverage in the Declarations. These limits are a part of, and not in addition to, the Equipment Breakdown Limit. If an amount of time is shown, coverage will continue for no more than that amount of time immediately following the Covered Cause of Loss. If a coverage is shown as "Included," that coverage is provided up to the remaining amount of the Equipment Breakdown Limit. If no limit is shown in the Declarations for a coverage, or if a coverage is shown as Excluded in the Declarations, that coverage will be considered to have a limit of $0.

      b. Loss arising from any "one equipment breakdown" may continue to be present or recur in a later policy period. This includes, but is not limited to, loss arising from mold, fungus, mildew or yeast as covered under Mold coverage. In such a case, the most we will pay for all loss, damage or expense arising out of any "one equipment breakdown" is the coverage limit applicable at the time of the Covered Cause of Loss.

      c. If two or more coverage limits apply to the same loss or portion of a loss, we will pay only the smallest of the applicable limits for that loss or portion of the loss. This means that if:

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

05-2018-CA-014557-XXXX-XX

(1)    You have a loss under one of the coverages listed in A.2.; and

(2)    All or part of the loss is not covered because the applicable coverage is Excluded or has a limit that is less than the amount of your loss,

we will not pay the remaining amount of such loss under any other coverage.

**EXAMPLE 1**

Property Damage Limit:  $7,000,000

Business Income Limit:  $1,000,000

Newly Acquired Locations Limit:  $500,000

There is a Covered Cause of Loss at a newly acquired location that results in a Property Damage loss of $200,000 and a Business Income loss of $800,000.

We will pay $500,000, because the entire loss is subject to the Newly Acquired Locations Limit of $500,000.

**EXAMPLE 2**

Property Damage Limit:  $7,000,000

Business Income Limit:  $500,000

Hazardous Substances Limit:  $25,000

There is a Covered Cause of Loss that results in a loss of $100,000. If no "hazardous substance" had been involved, the property damage loss would have been $10,000 and the business income loss would have been $20,000. The presence of the "hazardous substance" increased the loss by $70,000 (increasing the clean up and repair costs by $30,000 and increasing the business income loss by $40,000).

We will pay $55,000 ($10,000 property damage plus $20,000 business income plus $25,000 hazardous substances).

**D.  DEDUCTIBLES**

**1.  Deductibles for Each Coverage**

a.  Unless the Declarations indicate that your deductible is combined for all coverages, multiple deductibles may apply to any "one equipment breakdown."

b.  We will not pay for loss, damage or expense under any coverage until the amount of the covered loss or damage exceeds the deductible amount indicated for that coverage in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit indicated in the Declarations.

c.  If deductibles vary by type of "covered equipment" and more than one type of

"covered equipment" is involved in any "one equipment breakdown," only the highest deductible for each coverage will apply.

d.  The following applies when a deductible is expressed as a function of the horsepower rating of a refrigerating or air conditioning system. If more than one compressor is used with a single system, the horsepower rating of the largest motor or compressor will determine the horsepower rating of the system.

**2.  Direct and Indirect Coverages**

a.  Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Declarations.

b.  Unless more specifically indicated in the Declarations:

(1)  Indirect Coverages Deductibles apply to Business Income and Extra Expense loss, regardless of where such coverage is provided in this Equipment Breakdown Coverage; and

(2)  Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this Equipment Breakdown Coverage.

**EXAMPLE**

A Covered Cause of Loss results in covered losses as follows:

$100,000  Total Loss (all applicable coverages)

$ 35,000  Business Income Loss (including $2,000 of business income loss payable under Data Restoration coverage)

$  5,000  Extra Expense Loss

In this case, the Indirect coverages loss totals $40,000 before application of the Indirect Coverage Deductible. The Direct coverages loss totals the remaining $60,000 before application of the Direct Coverage Deductible.

**3.  Application of Deductibles**

a.  **Dollar Deductibles**

We will not pay for loss, damage or expense resulting from any "one equipment breakdown" until the amount of loss, damage or expense exceeds the applicable deductible or deductibles shown in the Declarations. We will then pay the amount

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

of loss, damage or expense in excess of the applicable deductible or deductibles, subject to the applicable limits shown in the Declarations.

b.  **Time Deductibles**

If a time deductible is shown in the Declarations, we will not be liable for any loss occurring during the specified number of hours or days immediately following the Covered Cause of Loss. If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

c.  **Multiple of Average Daily Value (ADV) Deductibles**

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the "business income" that would have been earned during the period of interruption had no Covered Cause of Loss occurred, divided by the number of working days in that period. The ADV applies to the "business income" value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."

The number indicated in the Declarations will be multiplied by the ADV as determined above. The result will be used as the applicable deductible.

**EXAMPLE**

Business is interrupted, partially or completely, for 10 working days. If there had been no Covered Cause of Loss, the total "business income" at the affected location for those 10 working days would have been $5,000. The Indirect Coverages Deductible is 3 Times ADV.

$5,000 / 10 = $500 ADV

3 X $500 = $1,500 Indirect Coverages Deductible

d.  **Percentage of Loss Deductibles**

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any

applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated Minimum Deductible, the Minimum Deductible will be the applicable deductible.

E.  **LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

1.  **Abandonment**

There can be no abandonment of any property to us.

2.  **Brands and Labels**

a.  If branded or labeled merchandise that is "covered property" is damaged by a Covered Cause of Loss, but retains a salvage value, you may:

(1)  Stamp the word SALVAGE on the merchandise or its containers if the stamp will not physically damage the merchandise; or

(2)  Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

b.  We will pay for any reduction in value of the salvage merchandise resulting from either of the two actions listed in 2.a. above, subject to all applicable limits.

c.  We will also pay the reasonable and necessary expenses you incur to perform either of the two actions described in 2.a. above. We will pay for such expenses to the extent that they do not exceed the amount recoverable from salvage.

d.  If a Brands and Labels Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

3.  **Coinsurance - Business Income Coverage**

a.  Unless otherwise shown in the Declarations, Business Income coverage is subject to coinsurance. This means that we will not pay the full amount of any "business income" loss if the "business income actual annual value" is greater than the "business income estimated annual value" at the affected location at the time of the Covered Cause of Loss. Instead, we will determine the most we will pay using the following steps:

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

05-2018-CA-014557-XXXX-XX

(1)   Divide the "business income estimated annual value" by the "business income actual annual value" at the time of the Covered Cause of Loss;

(2)   Multiply the total amount of the covered loss of "business income" by the amount determined in paragraph (1) above;

(3)   Subtract the applicable deductible from the amount determined in paragraph (2) above;

The resulting amount, or the Business Income Limit, whichever is less, is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

b.   Coinsurance applies separately to each insured location.

c.   If you report a single "business income estimated annual value" for more than one location, without providing information on how that amount should be distributed among the locations, we will distribute the amount evenly among all applicable locations.

**EXAMPLE 1 (Underinsurance)**

When:

The "business income actual annual value" at the location of loss at the time of the Covered Cause of Loss is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $100,000.

The actual loss of "business income" resulting from the Covered Cause of Loss is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $100,000 / $200,000 = .5

Step 2: $40,000 x .5 = $20,000

Step 3: $20,000 - $5,000 = $15,000

The total "business income" loss recovery, after deductible, would be $15,000. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

We will also charge you an additional premium in recognition of the actual "business income annual value."

**EXAMPLE 2 (Adequate insurance)**

When:

The "business income actual annual value" at the location of loss at the time of the Covered Cause of Loss is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $200,000.

The actual loss of "business income" resulting from the Covered Cause of Loss is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $200,000 / $200,000 = 1

Step 2: $40,000 x 1 = $40,000

Step 3: $40,000 - $5,000 = $35,000

The total "business income" loss recovery, after deductible, would be $35,000.

4.   **Coinsurance - Coverages other than Business Income**

Coverages other than Business Income may be subject to coinsurance if so indicated in the Declarations. If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a.   We will not pay the full amount of any loss if the value of the property subject to the coverage at the time of the Covered Cause of Loss times the Coinsurance percentage shown for it in the Declarations is greater than the applicable limit.

Instead, we will determine the most we will pay using the following steps:

(1)   Multiply the value of the property subject to the coverage at the time of the Covered Cause of Loss by the Coinsurance percentage;

(2)   Divide the applicable limit by the amount determined in step (1);

(3)   Multiply the total amount of loss, before the application of any deductible, by the amount determined in step (2); and

(4)   Subtract the deductible from the amount determined in step (3).

We will pay the amount determined in step (4) or the applicable limit, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

05-2018-CA-014557-XXXX-XX

   b.  Coinsurance applies separately to each insured location.

**EXAMPLE 1 (Underinsurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the Covered Cause of Loss is $200,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the Covered Cause of Loss is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $200,000 x 80% = $160,000

Step 2: $100,000/$160,000 = .625

Step 3: $60,000 x .625 = $37,500

Step 4: $37,500 - $5,000 = $32,500

The total Perishable Goods loss recovery, after deductible, would be $32,500. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE 2 (Adequate insurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the Covered Cause of Loss is $100,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the Covered Cause of Loss is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $100,000 x 80% = $80,000

Step 2: $100,000/$80,000 = 1.25

Coinsurance does not apply.

Step 3: $60,000 - $5,000 = $55,000

The total Perishable Goods loss recovery, after deductible, would be $55,000.

**5.  Defense**

We have the right, but are not obligated, to defend you against suits arising from claims of owners of property in your care, custody or control. When we do this, it will be at our expense.

**6.  Duties in the Event of Loss or Damage**

You must see that the following are done in the event of loss or damage:

   a.  Give us a prompt notice of the loss or damage, including a description of the property involved.

   b.  You must reduce your loss, damage or expense, if possible, by:

     (1)  Protecting property from further damage. We will not pay for your failure to protect property, as stated in Exclusion B.1.g.;

     (2)  Resuming business, partially or completely at the location of loss or at another location;

     (3)  Making up lost business within a reasonable amount of time. This includes working extra time or overtime at the location of loss or at another location. The reasonable amount of time does not necessarily end when the operations are resumed;

     (4)  Using merchandise or other property available to you;

     (5)  Using the property or services of others; and

     (6)  Salvaging the damaged property.

   c.  Allow us a reasonable time and opportunity to examine the property and premises before repair or replacement is undertaken or physical evidence of the Covered Cause of Loss is removed. But you must take whatever measures are necessary for protection from further damage.

   d.  Make no statement that will assume any obligation or admit any liability, for any loss, damage or expense for which we may be liable, without our consent.

   e.  Promptly send us any legal papers or notices received concerning the loss, damage or expense.

   f.  As often as may be reasonably required, permit us to inspect your property, premises and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

   g.  If requested, permit us to examine you and any of your agents, employees and representatives under oath. We may examine any insured under oath while not in the presence of any other insured. Such examination:

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

05-2018-CA-014557-XXXX-XX

(1) May be at any time reasonably required;

(2) May be about any matter relating to this insurance, your loss, damage or expense, or your claim, including, but not limited to, your books and records; and

(3) May be recorded by us by any methods we choose.

h. Send us a signed, sworn proof of loss containing the information we request. You must do this within 60 days after our request.

i. Cooperate with us in the investigation and settlement of the claim.

**7. Errors and Omissions**

a. We will pay your loss covered by this Equipment Breakdown coverage if such loss is otherwise not payable solely because of any of the following:

(1) Any error or unintentional omission in the description or location of property as insured under this policy;

(2) Any failure through error to include any premises owned or occupied by you at the inception of this policy; or

(3) Any error or unintentional omission by you that results in cancellation of any premises insured under this policy.

b. No coverage is provided as a result of any error or unintentional omission by you in the reporting of values or the coverage you requested.

c. It is a condition of this coverage that such errors or unintentional omissions shall be reported and corrected when discovered. The policy premium will be adjusted accordingly to reflect the date the premises should have been added had no error or omission occurred.

d. If an Errors and Omissions Limit is indicated in the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

**8. Proving Your Loss**

It is your responsibility, at your own expense, to provide documentation to us:

a. Demonstrating that the loss, damage or expense is the result of a Covered Cause of

Loss covered under this Equipment Breakdown Coverage; and

b. Calculating the dollar amount of the loss, damage and expense that you claim is covered.

Your responsibility in 8.a. above is without regard to whether or not the possible Covered Cause of Loss occurred at your premises or involved your equipment.

**9. Salvage and Recoveries**

When, in connection with any loss under this Equipment Breakdown Coverage, any salvage or recovery is received after the payment for such loss, the amount of the loss shall be refigured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

**10. Valuation**

We will determine the value of "covered property" as follows:

a. Except as specified otherwise, our payment for damaged "covered property" will be the smallest of:

(1) The cost to repair the damaged property;

(2) The cost to replace the damaged property on the same site; or

(3) The amount you actually spend that is necessary to repair or replace the damaged property.

b. The amount of our payment will be based on the most cost-effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

c. Except as described in d. below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

d. **Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to a Covered Cause of Loss, we will pay your additional cost to replace with equipment that we agree is better for the environment, safer for people or more energy or water efficient than the

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

equipment being replaced, subject to the following conditions:

(1) We will not pay more than 150% of what the cost would have been to replace with like kind and quality;

(2) We will not pay to increase the size or capacity of the equipment;

(3) This provision only applies to Property Damage coverage;

(4) This provision does not increase any of the applicable limits;

(5) This provision does not apply to any property valued on an Actual Cash Value basis; and

(6) This provision does not apply to the replacement of component parts.

e. The following property will be valued on an Actual Cash Value basis:

(1) Any property that does not currently serve a useful or necessary function for you;

(2) Any "covered property" that you do not repair or replace within 24 months after the date of the Covered Cause of Loss; and

(3) Any "covered property" for which Actual Cash Value coverage is specified in the Declarations.

Actual Cash Value includes deductions for depreciation.

f. If any one of the following conditions is met, property held for sale by you will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that otherwise would have applied:

(1) The property was manufactured by you;

(2) The sales price of the property is less than the replacement cost of the property; or

(3) You are unable to replace the property before its anticipated sale.

g. Except as specifically provided for under Data Restoration coverage, "data" and "media" will be valued on the following basis:

(1) For mass-produced and commercially available software, at the replacement cost.

(2) For all other "data" and "media," at the cost of blank "media" for reproducing the records. We will not pay for "data" representing financial records based on the face value of such records.

h. Air conditioning or refrigeration equipment that utilizes a refrigerant containing CFC (chlorofluorocarbon) substances will be valued at the cost to do the least expensive of the following:

(1) Repair or replace the damaged property and replace any lost CFC refrigerant;

(2) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(3) Replace the system with one using a non-CFC refrigerant.

In determining the least expensive option, we will include any associated Business Income or Extra Expense loss. If option (2) or (3) is more expensive than (1), but you wish to retrofit or replace anyway, we will consider this better for the environment and therefore eligible for valuation under paragraph d., Environmental, Safety and Efficiency Improvements. In such case, 10.d.(1) above is amended to read: "We will not pay more than 150% of what the cost would have been to repair or replace with like kind and quality."

F. **ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

1. **Additional Insured**

If a person or organization is designated in this Equipment Breakdown Coverage as an additional insured, we will consider them to be an insured under this Equipment Breakdown Coverage only to the extent of their interest in the "covered property."

2. **Bankruptcy**

The bankruptcy or insolvency of you or your estate will not relieve you or us of any obligation under this Equipment Breakdown Coverage.

3. **Concealment, Misrepresentation or Fraud**

We will not pay for any loss and coverage will be void if you or any additional insured at any

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

time:

a. Intentionally cause or allow loss, damage or expense in order to collect on insurance; or

b. Intentionally conceal or misrepresent a material fact concerning:

   (1) This Equipment Breakdown Coverage;

   (2) The "covered property";

   (3) Your interest in the "covered property"; or

   (4) A claim under this Equipment Breakdown Coverage.

**4. Jurisdictional Inspections**

It is your responsibility to comply with any state or municipal boiler and pressure vessel regulations. If any "covered equipment" that is "covered property" requires inspection to comply with such regulations, at your option we agree to perform such inspection.

**5. Legal Action Against Us**

No one may bring a legal action against us under this Equipment Breakdown Coverage unless:

a. There has been full compliance with all the terms of this Equipment Breakdown Coverage; and

b. The action is brought within two years after the date of the Covered Cause of Loss; or

c. We agree in writing that you have an obligation to pay for damage to "covered property" of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this policy to bring us into an action to determine your liability.

**6. Liberalization**

If we adopt any standard form revision for general use that would broaden the coverage under this Equipment Breakdown Coverage without additional premium, the broadened coverage will apply to this Equipment Breakdown Coverage commencing on the date that such revision becomes effective in the jurisdiction where the Covered Cause of Loss occurs.

**7. Loss Payable**

a. We will pay you and the loss payee shown in the Declarations for loss covered by this Equipment Breakdown Coverage, as

interests may appear. The insurance covers the interest of the loss payee unless the loss results from conversion, secretion or embezzlement on your part or on the part of the loss payee.

b. We may cancel the policy as allowed by the Cancellation Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel, we will mail you and the loss payee the same advance notice.

c. If we make any payment to the loss payee, we will obtain their rights against any other party.

**8. Maintaining Your Property and Equipment**

It is your responsibility to appropriately maintain your property and equipment. We will not pay your costs to maintain, operate, protect or enhance your property or equipment, even if such costs are to comply with our recommendations or prevent loss, damage or expense that would be covered under this policy.

**9. Mortgage Holders and Lender's Loss Payable**

a. We will pay for direct damage to "covered property" due to a Covered Cause of Loss to "covered equipment" to you and each Mortgage Holder and Lender Loss Payee shown in the Declarations in their order of precedence, as interests in the "covered property" may appear.

b. The Mortgage Holder and Lender Loss Payee have the right to receive loss payment even if they have started foreclosure or similar action on the "covered property."

c. If we deny your claim because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage, the Mortgage Holder and Lender Loss Payee will still have the right to receive loss payment, provided the Mortgage Holder and Lender Loss Payee does all of the following:

   (1) Pays any premium due under this Equipment Breakdown Coverage at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so;

   (3) Has notified us of any change in

TEC150 07/2015

Filing 67466370

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

Page 15 of 21

05-2018-CA-014557-XXXX-XX

ownership or material change in risk known to the mortgage holder; and

(4)   Has complied with all other terms and conditions of this Policy.

All of the terms of this Equipment Breakdown Coverage will then apply directly to the Mortgage Holder and Lender Loss Payee.

d.   If we pay the Mortgage Holder and Lender Loss Payee for any loss and deny payment to you because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage:

(1)   The rights of the Mortgage Holder and Lender Loss Payee will be transferred to us to the extent of the amount we pay; and

(2)   The rights of the Mortgage Holder and Lender Loss Payee to recover the full amount of their claim will not be impaired.

At our option, we may pay to the Mortgage Holder and Lender Loss Payee the whole principal on the debt plus any accrued interest. In this event, the mortgage or debt will be transferred to us and you will pay your remaining mortgage or debt to us.

e.   If we cancel this policy, we will give written notice to the Mortgage Holder and Lender Loss Payee at least:

(1)   10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2)   30 days before the effective date of cancellation if we cancel for any other reason.

f.   If we elect not to renew this policy, we will give written notice to the Mortgage Holder and Lender Loss Payee at least 10 days before the expiration date of this policy.

g.   If we suspend coverage, it will also be suspended as respects the Mortgage Holder and Lender Loss Payee. We will give written notice of the suspension to the Mortgage Holder and Lender Loss Payee.

**10.  Other Insurance**

If there is other insurance that applies to the same loss, damage or expense, this Equipment Breakdown Coverage shall apply only as excess insurance after all other applicable insurance has been exhausted.

**11.  Policy Period, Coverage Territory**

Under this Equipment Breakdown Coverage:

a.   The Covered Cause of Loss must occur during the Policy Period, but expiration of the policy does not limit our liability.

b.   The Covered Cause of Loss must occur within the following Coverage Territory:

(1)   The United States of America (including its territories and possessions);

(2)   Puerto Rico; and

(3)   Canada.

c.   As respects Off Premises Equipment Breakdown coverage only, the Covered Cause of Loss may occur in any country except one in which the United States has imposed sanctions, embargoes or similar restrictions on the provision of insurance.

**12.  Privilege to Adjust with Owner**

In the event of loss, damage or expense involving property of others in your care, custody or control, we have the right to settle the loss, damage or expense with respect to such property with the owner of the property. Settlement with owners of that property will satisfy any claim of yours.

**13.  Suspension**

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from a Covered Cause of Loss to that "covered equipment." This can be done by delivering or mailing a written notice of suspension to:

a.   Your last known address; or

b.   The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment."

If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**14.  Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Equipment Breakdown Coverage has rights to recover damages from

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a.  Prior to a Covered Cause of Loss.

b.  After a Covered Cause of Loss only if, at time of the Covered Cause of Loss, that party is one of the following:

   (1)  Someone insured by this Policy; or

   (2)  A business firm:

      (a)  Owned or controlled by you; or

      (b)  That owns or controls you.

## G.  DEFINITIONS

1.  "Accident"

a.  "Accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

   (1)  Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   (2)  Artificially generated electrical current, including electrical arcing, that damages electrical devices, appliances or wires;

   (3)  Explosion, other than combustion explosion, of steam boilers, steam piping, steam engines or steam turbines;

   (4)  An event inside steam boilers, steam pipes, steam engines or steam turbines that damages such equipment;

   (5)  An event inside hot water boilers or other water heating equipment that damages such equipment; or

   (6)  Bursting, cracking or splitting.

b.  None of the following is an "accident," however caused and without regard to whether such condition or event is normal and expected or unusual and unexpected. However, if an event as defined under 1.a. above results from any of the following, it will be considered an "accident."

   (1)  Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear;

   (2)  Any gradually developing condition;

   (3)  Any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind;

   (4)  Contamination by a "hazardous substance"; or

   (5)  Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

2.  "Anchor Location" means a location, operated by others, upon which you depend to attract customers to your scheduled location.

3.  "Boilers and Vessels" means:

a.  Boilers;

b.  Steam piping;

c.  Piping that is part of a closed loop used to conduct heat from a boiler;

d.  Condensate tanks; and

e.  Unfired vessels which, during normal usage, operate under vacuum or pressure, other than the weight of contents.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

4.  "Building Utilities" means "covered equipment" permanently mounted on or in a building and used to provide any of the following services within the building: heating, ventilating, air conditioning, electrical power, hot water, elevator or escalator services, central vacuum, natural gas service or communications. "Building utilities" does not include personal property or equipment used in manufacturing or processing.

5.  "Buried Vessels or Piping" means any piping or vessel buried or encased in the earth, concrete or other material, whether above or below grade, or in an enclosure which does not allow access for inspection and repair.

6.  "Business Income" means the sum of:

a.  The Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

b.  Continuing normal and necessary operating expenses incurred, including employee payroll.

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

7. **"Business Income Actual Annual Value"** means the "business income" for the current fiscal year that would have been earned had no Covered Cause of Loss occurred.

In calculating the "business income actual annual value," we will take into account the actual experience of your business before the Covered Cause of Loss and the probable experience you would have had without the Covered Cause of Loss.

8. **"Business Income Estimated Annual Value"** means the anticipated "business income" reported to us and shown in the Declarations. If no value is shown in the Declarations, the "business income estimated annual value" will be the most recent report of anticipated "business income" values on file with us.

9. **"Cloud Computing Services"** means professional, on-demand, self-service data storage or data processing services provided through the Internet or over telecommunications lines. This includes services known as IaaS (infrastructure as a service), PaaS (platform as a service), SaaS (software as a service) and NaaS (network as a service). This includes business models known as public clouds, community clouds and hybrid clouds. "Cloud computing services" include private clouds if such services are owned and operated by a third party.

10. **"Covered Equipment"**

   a. "Covered equipment" means the following:

   (1) Unless specified otherwise in the Declarations:

   (a) Equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

   (b) Equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

   "Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

   (2) Except as specifically provided for under Civil Authority, Contingent Business Income, Off Premises Equipment Breakdown, Service Interruption, paragraph (2) of Data Restoration and paragraph (2) of Perishable Goods, such equipment

must be at a location indicated in the Declarations and must be owned or leased by you, or operated under your control.

   b. None of the following is "covered equipment":

   (1) Structure, including but not limited to the structural portions of buildings and towers and scaffolding;

   (2) Foundation;

   (3) Cabinet, compartment, conduit or ductwork;

   (4) Insulating or refractory material;

   (5) "Buried vessels or piping";

   (6) Waste, drainage or sewer piping;

   (7) Piping, valves or fittings forming a part of a sprinkler or fire suppression system;

   (8) Water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

   (9) "Vehicle" or any equipment mounted on a "vehicle";

   (10) Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

   (11) Dragline, excavation or construction equipment;

   (12) Equipment manufactured by you for sale; or

   (13) "Data."

11. **"Covered Property"**

   a. "Covered Property" means property that you own or property that is in your care, custody or control and for which you are legally liable. Such property must be at a location indicated in the Declarations except as provided under Off Premises Equipment Breakdown coverage.

   b. None of the following is "covered property":

   (1) Accounts, bills, currency, deeds or other evidences of debt, money, notes or securities;

   (2) Fine arts, jewelry, furs or precious stones;

   (3) Precious metal, unless forming a part of "covered equipment";

TEC150 07/2015

Filing 67466370

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

Page 18 of 21

05-2018-CA-014557-XXXX-XX

(4)    Animals;

(5)    Contraband, or property in the course of illegal transportation or trade;

(6)    Land (including land on which the property is located), water, trees, growing crops or lawns; or

(7)    Shrubs or plants, unless held indoors for retail sale.

12. **"Data"** means information or instructions stored in digital code capable of being processed by machinery.

13. **"Electrical Generating Equipment"**

a.    "Electrical Generating Equipment" means equipment which converts any other form of energy into electricity. This includes, but is not limited to, the following:

    (1)    Boilers used primarily to provide steam for one or more turbine-generator units;

    (2)    Turbine-generators (including steam, gas, water or wind turbines);

    (3)    Engine-generators;

    (4)    Fuel cells or other alternative electrical generating equipment;

    (5)    Electrical transformers, switchgear and power lines used to convey the generated electricity; and

    (6)    Associated equipment necessary for the operation of any of the equipment listed in (1) through (5) above.

b.    "Electrical Generating Equipment" does not mean:

    (1)    Elevator or hoist motors that generate electricity when releasing cable; or

    (2)    Equipment intended to generate electricity solely on an emergency, back-up basis.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

14. **"Electronic circuitry"** means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

15. **"Electronic Circuitry Impairment"**

a.    "Electronic circuitry impairment" means a fortuitous event involving "electronic circuitry" within "covered equipment" that causes the "covered equipment" to suddenly lose its ability to function as it had been functioning immediately before such event. This definition is subject to the conditions specified in b., c., and d. below.

b.    We shall determine that the reasonable and appropriate remedy to restore such "covered equipment's" ability to function is the replacement of one or more "electronic circuitry" components of the "covered equipment."

c.    The "covered equipment" must be owned or leased by you, or operated under your control.

d.    None of the following is an "electronic circuitry impairment":

    (1)    Any condition that can be reasonably remedied by:

        (a)    Normal maintenance, including but not limited to replacing expendable parts, recharging batteries or cleaning;

        (b)    Rebooting, reloading or updating software or firmware; or

        (c)    Providing necessary power or supply.

    (2)    Any condition caused by or related to:

        (a)    Incompatibility of the "covered equipment" with any software or equipment installed, introduced or networked within the prior 30 days; or

        (b)    Insufficient size, capability or capacity of the "covered equipment."

    (3)    Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

16. **"Extra Expense"** means the additional cost you incur to operate your business over and above the cost that you normally would have incurred to operate your business during the same period had no Covered Cause of Loss occurred.

17. **"Hazardous Substance"** means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

18. **"Interruption of Service"**

    a. "Interruption of service" means a failure or disruption of the normal supply of any of the Covered Services listed in b. and c. below, when such failure or disruption is caused by an "accident" to "covered equipment," subject to the conditions listed in d. through g. below. The failure or disruption must arise from an "accident" even if the Covered Cause of Loss for this policy includes "electronic circuitry impairment."

    b. Covered Services are electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, Internet access, telecommunications services, wide area networks and data transmission.

    c. If indicated in the Declarations, Covered Services also includes "cloud computing services."

    d. The "covered equipment" must either be:

       (1) Owned by a company with whom you have a contract to supply you with one of the Covered Services; or

       (2) Used to supply you with one of the Covered Services and located within one mile of a location indicated in the Declarations.

    e. If a Service Interruption Distance Limitation is indicated in the Declarations, the "covered equipment" suffering the "accident" must be located within the indicated distance of any location indicated in the Declarations.

    f. If an Interruption of Service Waiting Period is indicated in the Declarations, no failure or disruption of service will be considered to qualify as an "interruption of service" until the failure or disruption exceeds the indicated number of hours immediately following the "accident."

    g. "Interruption of service" does not include

any failure or disruption, whether or not arising from or involving an "accident," in which a supplier could have continued to provide service to the location but chose for any reason to reduce or discontinue service.

19. **"Interruption of Supply"**

    a. "Interruption of Supply" means a failure or disruption of the normal supply of any of the Covered Contingencies listed below, when such failure or disruption is caused by an "accident" to "covered equipment" that is located at a Contingent Business Income supplier or receiver location indicated in the Declarations. If no Contingent Business Income supplier or receiver location is indicated in the Declarations, the "covered equipment" must be owned by a supplier from whom you have received the Covered Contingency for at least six months prior to the "accident" or a receiver to whom you have supplied the Covered Contingency for at least six months prior to the "accident."

    b. Covered Contingencies are raw materials, intermediate products, finished products, packaging materials and product processing services.

20. **"Media"** means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

21. **"One Equipment Breakdown"**

    a. If Electronic Circuitry Impairment is indicated in the Declarations as Included, "one equipment breakdown" means all "accidents" or "electronic circuitry impairments" occurring at the same time from the same event. If an "accident" or "electronic circuitry impairment" causes other "accidents" or "electronic circuitry impairments," all will be considered "one equipment breakdown."

    b. If Electronic Circuitry Impairment is indicated in the Declarations as Not Included, "one equipment breakdown" means all "accidents" occurring at the same time from the same event. If an "accident" causes other "accidents," all will be considered "one equipment breakdown."

22. **"Ordinary Payroll"** means the Payroll Expenses associated with all employees other than executives, department managers and employees under contract.

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

vs

05-2018-CA-014557-XXXX-XX

As used above, Payroll Expenses means all payroll, employee benefits directly related to payroll, FICA payments you pay, union dues you pay and workers compensation premiums.

"Ordinary payroll" does not include pensions or directors fees.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

23. **"Period of Restoration"**

    a. Except as indicated in b. below, "period of restoration" means the period of time that begins at the time of the Covered Cause of Loss and continues until the earlier of:

        (1) The date the "covered equipment" is repaired or replaced; or

        (2) The date on which such equipment could have been repaired or replaced with the exercise of due diligence and dispatch,

        plus the number of days, if any, shown in the Declarations for Extended Period of Restoration.

    b. Only as respects Civil Authority coverage, "period of restoration" means the period of time that begins at the time access is prohibited by action of civil authority and continues until the earlier of:

        (1) Twenty one (21) days thereafter; or

        (2) The date access is restored.

24. **"Perishable Goods"** means any "covered property" subject to deterioration or impairment as a result of a change of conditions, including but not limited to temperature, humidity or pressure.

25. **"Production Machinery"** means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus. However, "production machinery" does not mean any boiler, or fired or unfired pressure vessel.

    This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

26. **"Spoilage"** means any detrimental change in state. This includes but is not limited to thawing of frozen goods, warming of refrigerated goods, freezing of fresh goods, solidification of liquid or molten material and chemical reactions to material in process.

27. **"Vehicle"** means any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

    However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

© 2015, The Hartford Steam Boiler Inspection and Insurance Company
Includes copyright material of Insurance Services Office, Inc. with its permission.

# Terrorism Risk Insurance Act Disclosure

Named Insured:
Viksar, Inc

Policy Number ............... FBP2362627

Effective Date ................ 07/31/2017
Issue Date....................... 08/02/2017

This endorsement is attached to and made part of your policy in response to the disclosure requirements of the Terrorism Risk Insurance Act, as amended.

## NOTICE OF TERRORISM INSURANCE COVERAGE

**Applicable Premium**

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0, and does not include any charges for the portion of losses covered by the United States government under the Act.

**Informational Notice**

The following notice does not change your coverage under this policy, but is provided for your information in compliance with the Terrorism Risk Insurance Act, as amended.

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Includes copyrighted material of National Association of Insurance Commissioners with its permission.

# Florida Changes

## Amendatory Endorsement

This endorsement changes the policy.  Please read it carefully.
These changes apply only to locations covered by the policy that are in the State of Florida.

I.  The following modifies the **AGREEMENT AND CONDITIONS:**

A.  Section I. **COMMON POLICY CONDITIONS, A. CANCELLATION,** paragraphs 2. and 5. are deleted and replaced with the following:

2.  .a.  **Cancellation for policies in effect for 90 days or less:**
If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:
(1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
(2)  20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:
(a)  A material misstatement or misrepresentation; or
(b)  A failure to comply with underwriting requirements established by the insurer.
b.  **Cancellation for policies in effect for more than 90 days:**
If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:
(1)  Nonpayment of premium;
(2)  The policy was obtained by a material misstatement;
(3)  There has been a failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;
(4)  There has been a substantial change in the risk covered by the policy; or
(5)  The cancellation is for all

insureds under such policies for a given class of insureds.
If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:
(1)  10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or
(2)  45 days before the effective date of cancellation if cancellation is for one or more of the reasons stated in paragraphs b.(2) through b.(5) above.
5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.
If this is an audit policy, then, subject to your full cooperation with us or our producer in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect.  If our audit is not completed within this time limitation, then we will accept your own audit, and any premium refund due will be mailed within 10 working days of receipt of your audit.
The cancellation will be effective even if we have not made or offered a refund.

B.  The following is added to section I. **COMMON POLICY CONDITIONS:**

**NONRENEWAL**

TEC FL 07/2015
Filing 67466370

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
VS

Page 1 of 2
05-2018-CA-014557-XXXX-XX

## Florida Changes, continued

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least 45 days prior to the expiration of the policy.
2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following modifies the **EQUIPMENT BREAKDOWN COVERAGE FORM:**

Section F. **ADDITIONAL CONDITIONS, 5. Legal Action Against Us**, paragraph b. is deleted and replaced with the following:

b. The action is brought within 5 years from the date of the Covered Cause of Loss; or

TEC FL 07/2015

Filing 67466370

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

VS

Page 2 of 2

05-2018-CA-014557-XXXX-XX

Filing # 68683762 E-Filed 03/01/2018 05:25:52 PM

IN THE CIRCUIT COURT OF THE 18th
JUDICIAL CIRCUIT IN AND FOR
BREVARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 05-2018-CA-014557

Judge Tonya Rainwater

VIKSAR, INC.,

      Plaintiff,

v.

THE HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY,

      Defendant.

## NOTICE OF APPEARANCE

PLEASE TAKE NOTICE that the undersigned attorneys hereby appear as counsel on behalf of Defendant THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, as attorneys of record in the above-numbered case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of March, 2018, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal.  I also certify that the foregoing document is being served this day on Mr. Ty Tyler, TANDHPA@BELLSOUTH.NET.

CASE NO. 05-2018-CA-014557

Respectfully submitted,  --


*/s/ Rory Eric Jurman*
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:    (954) 377-8100
Facsimile:    (954) 377-8101

- 2 -

Filing # 68683762 E-Filed 03/01/2018 05:25:52 PM

IN THE CIRCUIT COURT OF THE 18th
JUDICIAL CIRCUIT IN AND FOR
BREVARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 05-2018-CA-014557

Judge Tonya Rainwater

VIKSAR, INC.,

      Plaintiff,

v.

THE HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY,

      Defendant.

## DESIGNATION OF CURRENT MAILING AND EMAIL ADDRESS OF ATTORNEYS FOR THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY

    I, RORY ERIC JURMAN, being sworn, certify that my current mailing address is: One Financial Plaza, Suite 2100, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394, Telephone No. (954) 377-8105, Fax No. 954.377.8101.

    I designate as my current e-mail address(es): rjurman@fowler-white.com; admiszewicki@fowler-white.com; rejeserve@fowler-white.com; mfamada@fowler-white.com.

    **I understand that I must keep the clerk's office and the opposing party or parties notified of my current mailing and e-mail address(es) and that all future papers in this lawsuit will be served at the address(es) on record at the clerk's office.**

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 1st day of March, 2018, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal. I also certify that

CASE NO.

the    foregoing    document    is    being    served    this    day    on    Mr.    Ty    Tyler,
TANDHPA@BELLSOUTH.NET.

Respectfully submitted,

*/s/ Rory Eric Jurman*
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:    (954) 377-8100
Facsimile:    (954) 377-8101

Filing # 68749782 E-Filed 03/02/2018 05:48:23 PM

IN THE CIRCUIT COURT OF THE 18th
JUDICIAL CIRCUIT IN AND FOR
BREVARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 05-2018-CA-014557

Judge Tonya Rainwater

VIKSAR, INC.,

   Plaintiff,

v.

THE HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY,

   Defendant.

## NOTICE OF FILING ANSWER AND AFFIRMATIVE DEFENSES

Defendant, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY ("HSB"), by and through undersigned counsel, hereby files its Answer and Affirmative Defenses.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March, 2018, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal. I also certify that the foregoing document is being served this day on Mr. Ty Tyler, TANDHPA@BELLSOUTH.NET.

CASE NO. 05-2018-CA-014557

Respectfully submitted,

/s/ Rory Eric Jurman
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:   (954) 377-8101

- 2 -

IN THE CIRCUIT COURT OF THE 18th
JUDICIAL CIRCUIT IN AND FOR
BREVARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 05-2018-CA-014557

Judge Tonya Rainwater

VIKSAR, INC.,

      Plaintiff,

v.

THE HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY,

      Defendant.

## REQUEST FOR ADMISSIONS TO VIKSAR, INC.

    Defendant, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY ("HSB"), by and through undersigned counsel, and pursuant to Fla. R. Civ. P. 1.370, hereby serves this Request for Admissions on the Plaintiff, Viksar, Inc., and requests the Plaintiff to admit or deny all of the following statements within the time period required by the Florida Rules of Civil Procedure.

    1.    Admit that Viksar, Inc. is claiming more than $75,000.00 in damages, exclusive of interest and costs, as a result of the circumstances giving rise to this lawsuit.

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 2nd day of March, 2018, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal. I also certify that the foregoing document is being served this day on Mr. Ty Tyler, TANDHPA@BELLSOUTH.NET.

Respectfully submitted,

/s/ Rory Eric Jurman
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:    (954) 377-8101

Filing # 68749782 E-Filed 03/02/2018 05:48:23 PM

IN THE CIRCUIT COURT OF THE 18th
JUDICIAL CIRCUIT IN AND FOR
BREVARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 05-2018-CA-014557

Judge Tonya Rainwater

VIKSAR, INC.,

     Plaintiff,

v.

THE HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY,

     Defendant.

## REQUEST FOR PRODUCTION TO VIKSAR, INC.

Defendant, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY ("HSB"), by and through undersigned counsel, hereby requests the Plaintiff, pursuant to Fla. R. Civ. P. 1.350, to produce to HSB, in the time required by Rule 1.350, at the offices of the undersigned counsel, the following:

    1.    All documents supporting Viksar, Inc.'s response to Interrogatory No. 1.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March, 2018, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal. I also certify that the foregoing document is being served this day on Mr. Ty Tyler, TANDHPA@BELLSOUTH.NET.

CASE NO. 05-2018-CA-014557

Respectfully submitted,


/s/ Rory Eric Jurman

Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:   (954) 377-8101

IN THE CIRCUIT COURT OF THE 18th
JUDICIAL CIRCUIT IN AND FOR
BREVARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 05-2018-CA-014557

Judge Tonya Rainwater

VIKSAR, INC.,

       Plaintiff,

v.

THE HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY,

       Defendant.

## NOTICE OF SERVICE OF INTERROGATORIES TO VIKSAR, INC.

Defendant, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY ("HSB"), by and through undersigned counsel, and pursuant to Fla. R. Civ. P. 1.340, propounds the following interrogatories upon the Plaintiff to be answered under oath within thirty (30) days of receipt thereof in accordance with the Florida Rules of Civil Procedure.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March, 2018, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal. I also certify that the foregoing document is being served this day on Mr. Ty Tyler, TANDHPA@BELLSOUTH.NET.

CASE NO. 05-2018-CA-014557

Respectfully submitted,


/s/ Rory Eric Jurman
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:    (954) 377-8101

- 2 -

CASE NO. 05-2018-CA-014557

## INTERROGATORIES TO PLAINTIFF

1.  Please itemize all monetary damages Viksar claims to have incurred arising out of the circumstances described in the Complaint for which Viksar is seeking recovery from HSB.

_____
Authorized Representative
Viksar, Inc.

STATE OF FLORIDA          )
                          )
COUNTY OF BREVARD         )

Subscribed and sworn to (or affirmed) before me on this ____ day of _____, 20___, by _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) who appeared before me.

_____
(Seal)

_____
Signature

- 3 -

IN THE CIRCUIT COURT OF THE 18th
JUDICIAL CIRCUIT IN AND FOR
BREVARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 05-2018-CA-014557

Judge Tonya Rainwater

VIKSAR, INC.,

     Plaintiff,

v.

THE HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY,

     Defendant.

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY ("HSB"), by and through undersigned counsel, hereby files this Answer and Affirmative Defenses, and states:

1.    Admitted for jurisdictional purposes only.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.    Denied.

7.    Denied.

8.    Denied.

9.    Denied.

10.    Denied.

11.    Denied.

WHEREFORE, the Defendant, THE HARTFORD STEAM BOILER INSPECTION AND

INSURANCE COMPANY, prays that this Court grant judgment in its favor, such that that the

Plaintiff take nothing, as well as granting any such further relief that this Court deems just and

appropriate.

## GENERAL DENIAL

HSB denies any allegations not expressly admitted, and demands strict proof thereof.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a cause of action upon which relief can be granted, as

the Plaintiff has wholly failed to allege any modicum of facts as to the nature or cause of the alleged

damages for which it seeks to recover in this matter that would trigger coverage under the subject

policy due to an "accident", and instead merely sets forth a conclusory allegation that an "accident"

occurred.

2.     The Plaintiff's claim must fail because the alleged damages do not arise from a

covered "accident" within the meaning of the Policy. The Policy provides as follows:

### A. COVERAGE

This Equipment Breakdown Coverage provides insurance for a
Covered Cause of Loss as defined in A.1. below. In the event of a
Covered Cause of Loss, we will pay for loss as described in A.2.
below.

### 1. Covered Cause of Loss

### a. "Accident" and "Electronic Circuitry Impairment"

The following applies when Electronic Circuitry Impairment is
shown as Included in the Declarations:

The Covered Cause of Loss for this Equipment Breakdown Coverage is an "accident" or "electronic circuitry impairment." Without an "accident" or "electronic circuitry impairment" there is no Equipment Breakdown Coverage.

\*\*\*\*\*\*

## G. DEFINITIONS

### 1. "Accident"

a. "Accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

(1) Mechanical breakdown, including rupture or bursting caused by centrifugal force;

(2) Artificially generated electrical current, including electrical arcing, that damages electrical devices, appliances or wires;

(3) Explosion, other than combustion explosion, of steam boilers, steam piping, steam engines or steam turbines;

(4) An event inside steam boilers, steam pipes, steam engines or steam turbines that damages such equipment;

(5) An event inside hot water boilers or other water heating equipment that damages such equipment; or

(6) Bursting, cracking or splitting.

...

### 18. "Interruption of Service"

a. "Interruption of service" means a failure or disruption of the normal supply of any of the Covered Services listed in b. and c. below, when such failure or disruption is caused by an "accident" to "covered equipment," subject to the conditions listed in d. through g. below. The failure or disruption must arise from an "accident" even if the Covered Cause of Loss for this policy includes "electronic circuitry impairment."

\*\*\*\*\*\*

## B. EXCLUSIONS

We will not pay for any excluded loss, damage or expense, even though any other cause or event contributes concurrently or in any sequence to the loss, damage or expense.

...

2. We will not pay for a Covered Cause of Loss caused by or resulting from any of the following causes of loss:

...

b. Windstorm or Hail. However, this exclusion does not apply when:

(1) "Covered equipment" located within a building or structure suffers a Covered Cause of Loss that results from wind-blown rain, snow, sand or dust; and

(2) The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

...

******

3.      The Plaintiff's claim must fail to the extent that the Plaintiff seeks to recover for

damages to property caused by a failure to maintain the property and equipment. The subject policy

provides in relevant part as follows:

### 8. Maintaining Your Property and Equipment

It is your responsibility to appropriately maintain your property and equipment. We will not pay your costs to maintain, operate, protect or enhance your property or equipment, even if such costs are to comply with our recommendations or prevent loss, damage or expense that would be covered under this policy.

The Plaintiff failed to maintain and diligently inspect its fuel dispensing systems, such that they

suffered damage due to wear, tear and deterioration that could have been avoided and remedied

had the Plaintiff properly maintained them.

- 4 -

4.     The Plaintiff's claims must fail, as the Plaintiff cannot prove that any loss for which it seeks to recover in this lawsuit is the result of an "accident". The subject policy provides in relevant part as follows:

### E.     LOSS CONDITIONS

********

**8.     Proving Your Loss**

It is your responsibility, at your own expense, to provide documentation to us:

a.     Demonstrating that the loss, damage or expense is the result of an "accident" covered under this Equipment Breakdown Coverage, and

b.     Calculating the dollar amount of the loss, damage and expense that you claim is covered.

Your responsibility in 8.a. above is without regard to whether or not the possible "accident" occurred at your premises or involved your equipment.

******

5.     The Plaintiff's claim is barred, as the Plaintiff has failed to comply with all of the terms and conditions of the subject policy as detailed above, herein. The subject policy provides in relevant part as follows:

### F.     ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

*****

**5.     Legal Action Against Us**

No one may bring a legal action against us under the Equipment Breakdown Coverage unless:

a.     There has been full compliance with all the terms of this Equipment Breakdown Coverage[.]

- 5 -

********

To the extent that the Plaintiff is seeking to recover for any damage to its property that were not already reported to HSB, such alleged damages were never reported to HSB, nor were they exhibited to HSB, and therefore Plaintiff has failed to comply with its post-loss duties which are a precondition to filing suit. HSB was also deprived of its right to fully investigate any such alleged damages pursuant to the terms and conditions of the subject policy.

6.      This action is governed and limited by the terms, conditions, and exclusions of the subject Policy. To the extent that the damages alleged in the Complaint occurred outside the scope of HSB's Policy, such Policy does not provide coverage for those claims.

7.

## DEMAND FOR JURY TRIAL

Defendant, HSB, demands trial by jury of all issues so triable as a matter of right.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March, 2018, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal. I also certify that the foregoing document is being served this day on Mr. Ty Tyler, TANDHPA@BELLSOUTH.NET.

CASE NO. 05-2018-CA-014557

Respectfully submitted,


/s/ Rory Eric Jurman
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:    (954) 377-8100
Facsimile:    (954) 377-8101

- 7 -

IN THE CIRCUIT COURT, 18TH
JUDICIAL CIRCUIT, IN AND FOR
BREVARD COUNTY, FLORIDA

CASE NO.:    05-2018-CA-014557

VIKSAR, INC., a Florida corporation

     Plaintiff,

vs.

HARTFORD STEAM BOILER INSPECTION
AND INSURANCE COMPANY, a/k/a The Hartford
Steam Boiler Inspection and Insurance Company,
a foreign insurance corporation,

     Defendant.

_____/

### PLAINTIFF'S RESPONSE TO REQUEST FOR ADMISSIONS

    Plaintiff, VIKSAR, INC., by its undersigned attorneys, hereby responds to Defendant's Request for Admissions as follows:

1.    Admitted.

                 TYLER & HAMILTON, P.A.

                 /s/ Ty Tyler_____
                 TY TYLER, ESQ.
                 Florida Bar No.: 363413
                 Midtown Centre, Building 4000
                 4811 Beach Boulevard, Suite 200
                 Jacksonville, Florida 32207
                 (904) 398-9999 Telephone
                 (904) 398-0806 Facsimile
                 courtdocs@floridainsurancelawyers.com
                 tandhpa@bellsouth.net
                 Attorney for Plaintiff, VIKSAR, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been furnished via Electronic Mail (*Email*) and the Florida Courts E-Filing Portal to: **RORY JURMAN, ESQ. and AARON M. DMISZEWICKI, ESQ.,** Fowler White Burnett, 100 SE Third Avenue, Suite 2100, Ft. Lauderdale, FL 33394, Attorneys for Defendant, this 16th day of March, 2018.

/s/ Ty Tyler
Attorney